IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SELECTIVE WAY INSURANCE COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>ROSEANNE BROWNING APPLE., et al.,<br><br>*Defendants.* | CASE NO. 3:13-cv-00042<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

Selective Way Insurance Company ("Plaintiff," or "Selective") filed this action on October 3, 2013, seeking a declaratory judgment under 28 U.S.C. § 2201. Selective asks me to declare that it has no duty to defend or indemnify defendant Roseanne Browning Apple ("Mrs. Apple") in connection with any claim or lawsuit brought against her by Earl Eugene Hoar ("Mr. Hoar") or to pay subrogation to his insurer, Progressive Gulf Insurance Company ("Progressive"). The case arises from a May 18, 2012 motor vehicle accident between Mrs. Apple and Mr. Hoar. Selective had insured the vehicle that Mrs. Apple was driving under a commercial policy (the "Policy"), and now argues that she is not entitled to coverage because she does not qualify as an insured.

The matter is now before me upon consideration of the parties' cross motions for summary judgment. I construe both Mr. Hoar's motion for joinder and Progressive's motion for joinder as motions to join and adopt Mrs. Apple and Building Industries' motion for summary judgment. Mr. Hoar's motion will be GRANTED and Progressive's motion will be GRANTED. I have heard argument on the fully-briefed motions. I find that there are genuine disputes of material fact relating to Mrs. Apple and Building Industries' claims for reformation and for

coverage under a permissive use theory. Accordingly, Plaintiff's motion for summary judgment on its complaint will be DENIED. For the same reason, Mrs. Apple and Building Industries' motion for summary judgment will be DENIED. Defendants' arguments for estoppel and coverage under the plain language of the Policy both fail as a matter of law. Therefore, Plaintiff's motion for summary judgment on Defendants' counterclaims will be GRANTED in part, and DENIED, in part.

### I. BACKGROUND

In 2011, Mrs. Apple's husband, Clevius Carr Apple, Jr. ("Mr. Apple"), obtained a commercial insurance policy from Selective for a 2004 Lincoln Town Car (the "Town Car"), which is principally garaged and used in the Commonwealth of Virginia. The Policy listed Building Industries, Inc. ("Building Industries") as the named insured. Building Industries is a Virginia corporation owned by Mr. Apple and his son, John Apple. Mr. Apple purchased the Policy from BB&T Insurance Services Inc. ("BB&T"), which gathered information and issued the Policy on Selective's behalf. After Selective received Mr. Apple's information from BB&T, it issued a Commercial General Liability Policy to Building Industries. The Policy listed the Town Car in the "Schedule of Covered Autos You Own" and attributed to it a specific dollar amount as the premium. The Policy listed Building Industries as both the named insured and the owner of the Town Car, although the vehicle was actually titled to Mr. and Mrs. Apple individually.[1]

On May 18, 2012, Mrs. Apple was taking Mr. Apple home from a hospital in the Town Car when she was involved in a motor vehicle accident with Mr. Hoar. Mr. Hoar was injured and filed a claim, which Selective unsuccessfully attempted to negotiate to settlement in the

---

[1] Although Selective asserted in the hearing on the motions that Mr. Apple must have misrepresented the titling of the car, it does not seek to void the policy nor does argue that the alleged misrepresentation is a defense to coverage.

summer of 2012. At some point in time after the accident—the parties dispute when exactly—Selective learned that the Town Car was titled to Mr. and Mrs. Apple rather than to Building Industries. As a result, Selective issued the Apples a reservation of rights letter on July 15, 2013. The letter stated that the accident may not be covered under the Policy because the Town Car was not titled to Building Industries, nor was Mrs. Apple an employee of that corporation. The relevant portion of the Policy reads as follows:

> **1. Who Is An Insured**
> The following are "insureds":
> **a.** You for any covered "auto".
> **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>> **(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
>> **(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
>> **(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
>> **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

Additionally, a Policy endorsement extends coverage to "[a]ny 'employee' or 'volunteer worker' of yours while using in your business or your personal affairs, a covered 'auto' you don't own, hire or borrow."

I denied Mrs. Apple and Building Industries' motion to dismiss on March 3, 2014. Mrs. Apple and Building Industries have since filed a counterclaim, which Mr. Hoar and Progressive have joined. Mrs. Apple, Building Industries, Mr. Hoar, and Progressive (collectively "Defendants") seek (1) a declaratory judgment that Mrs. Apple qualifies as an insured under the terms of the Policy and that Virginia's Omnibus Clause, VA. CODE ANN. § 38.2-2204 ("Omnibus Clause") otherwise mandates coverage; (2) an order estopping Selective from denying coverage

– 3 –

after listing the Town Car in the "Schedule of Covered Autos You Own" in the Policy and voluntarily negotiating Mr. Hoar's insurance claim; and (3) reformation of the Policy to make Mrs. Apple an insured under the circumstances of the accident.

## II. LEGAL STANDARD

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment (or partial summary judgment) "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; s*ee also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

When faced with cross-motions for summary judgment, a court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (quotations omitted). If the court finds that there is a genuine issue of material fact, both motions must be

denied. However, "if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." *Trigo v. Travelers Commercial Ins. Co.*, 755 F. Supp. 2d 749, 752 (W.D. Va. 2010).

## III. DISCUSSION

### A. Estoppel

In Virginia, a party seeking to estop an insurer from denying coverage must establish that he "justifiably relied on the insurer's conduct and was thus misled by the company's behavior into believing the policy was still in force." *Harris v. Criterion Ins. Co.*, 281 S.E.2d 878, 881 (Va. 1981). Estoppel requires the following four elements: a representation by the insurer that coverage exists, reliance on that representation by the insured, a subsequent change of position by the insurer, and a detriment to the insured as a result. *City of Salem v. Colegrove*, 321 S.E.2d 654, 657 (Va. 1984). Consequently, an insurer who undertakes an unreserved legal defense on behalf of an insured is generally estopped from subsequently seeking to avoid liability under the policy. *State Farm Fire & Cas. Co. v. Mabry,* 497 S.E.2d 844, 846 (Va. 1998). In addition, the party seeking to invoke estoppel must prove each element by "clear, precise and unequivocal evidence." *Harris*, 281 S.E.2d at 881 (quoting *Employers Ins. Co. v. Great American Ins. Co.*, 200 S.E.2d 560, 564 (Va. 1973)). Defendants argue that Selective is estopped from denying coverage under two different theories, but both of their arguments fail for the reasons that follow.

Defendants first argue that Selective is estopped because it listed the Town Car on the Policy's "Schedule of Covered Autos You Own" and affirmed coverage when contacted by the Virginia Department of Motor Vehicles ("DMV") following the accident. The DMV sent Selective a communication on June 22, 2012, asking it to verify that the Town Car was insured. The correspondence included a table that named Mr. Apple and Mrs. Apple as the vehicle's

owners. The DMV asked Selective to mark which vehicles were uninsured and to return the form only if one or more vehicle lacked coverage. Selective did not return the form. Courts have repeatedly found that an insurer's response to receipt of such a form is not, standing alone, a basis for waiver or estoppel. *See Virginia Farm Bureau Mut. Ins. Co. v. Saccio*, 133 S.E.2d 268, 277 (Va. 1963); *Ins. Co. of N. Am. v. Atl. Nat. Ins. Co.*, 329 F.2d 769, 774 (4th Cir. 1964). Furthermore, listing the Town Car as a "Covered Auto" on the Policy is a representation by Selective that the Town Car would be insured in some circumstances, not that it would necessarily be insured for any conceivable accident. Thus even taken together, the two actions are not sufficient to support estoppel. More importantly, Defendants have failed to demonstrate the required element of detrimental reliance. *City of Salem*, 321 S.E.2d at 657. Selective's investigation of the accident and negotiation with Mr. Hoar (discussed further below) may well have put Defendants in a better position than they would have been had Selective immediately disclaimed coverage and taken no action on Mrs. Apple's behalf.

Alternatively, Defendants contend that Selective's attempt to negotiate a settlement with Mr. Hoar constituted a "defense" of Mrs. Apple such that Selective is estopped from denying coverage. Selective's records show that several of its employees attempted to negotiate a settlement with respect to Mr. Hoar's claim against Mrs. Apple during the summer of 2012. These records also show that Selective did not send Mrs. Apple a reservation of rights letter until nearly a year later. However, the cases that have considered whether an insurer is estopped after providing a "defense" to an insured have all involved the insurer providing a legal defense to a tort suit. *See State Farm*, 497 S.E.2d at 845; *Stillwell v. Iowa Nat. Mut. Ins. Co.*, 139 S.E.2d 72, 76 (Va. 1964). Indeed, at least one decision uses the language "*legal* defense," which implies that the defense must be related to an action in the state or federal court system. *State Farm* 497

S.E.2d at 846 (emphasis added). The record reflects that at the time of the negotiations, Mr. Hoar's sole action against Mrs. Apple was a claim. Further, I take judicial notice of the fact that Mr. Hoar filed a tort suit against Mrs. Apple and Building Industries on December 2, 2013, several months after Selective issued its reservation of rights, and more than a year after the negotiations took place. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that a federal court may take judicial notice of state court proceedings that are not part of the record). Defendants have produced no evidence that Selective participated in Mrs. Apple's defense of that lawsuit. Defendants' argument fails for both these reasons and their inability to demonstrate detrimental reliance. *See City of Salem*, 321 S.E.2d at 657. Consequently, Selective is not estopped from denying coverage.

### B. Coverage Under the "Personal Affairs" Provision of the Policy

Defendants contend that the accident is covered under the terms of the Policy. Specifically, they maintain that the accident falls under the Policy provision that extends coverage to "[a]ny employee or volunteer worker of yours while using in your business or your personal affairs, a covered auto you don't own, hire or borrow." (Internal quotation marks omitted). Courts construing insurance contracts in Virginia must "give the language its plain and ordinary meaning and enforce the policy as written" if that language "is clear and unambiguous." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Block Roofing Corp.,* 754 F. Supp. 2d 819, 823 (E.D. Va. 2010). Policy provisions are ambiguous when the language is "capable of more than one reasonable meaning." *Id.* For unambiguous provisions, "[w]ords that the parties used are normally given their usual, ordinary and popular meaning," such that "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it," with the "presumption that the parties have not used words needlessly." *City of Chesapeake v. State Self-*

*Insurers Risk Retention Grp, Inc.*, 628 S.E.2d 539, 541 (Va. 2006). Any ambiguities must be construed against the insurer. *Block*, 754 F. Supp. 2d at 823 (citing *Craig v. Dye,* 526 S.E.2d 9 (Va. 2000)). Likewise, exclusionary language is "construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies." *Am. Reliance Ins. Co. v. Mitchell*, 385 S.E.2d 583, 585 (Va. 1989) (citations omitted). Although this standard is favorable to the insured, the "personal affairs" provision of the Policy does not extend coverage to the accident as a matter of law.

Building Industries does not own the Town Car, which is listed as a covered auto, so the question is whether Mrs. Apple is an "employee" or "volunteer worker" of the corporation, and if so, whether she was using the Town Car in the corporation's "business" or "personal" affairs. The Policy does not sufficiently define "employee,"[2] and since the term is unambiguous, I look to its ordinary meaning, which "connotes continuous service of a person who works full time for another for a consideration." *Virginia Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co*., 475 S.E.2d 264, 267 (Va. 1996) (quoting *American Reliance Insurance Co. v. Mitchell*, 385 S.E.2d 583, 586 (Va. 1989)). Mrs. Apple admits that at the time of the accident, she did not work full time for Building Industries, nor did she receive a paycheck from the company. Consequently, she cannot be considered an "employee" under the Policy. She may, however, qualify as a "volunteer worker." The Policy defines "volunteer worker" as "a person who is not your 'employee,' and who donates his or her work and acts at the direction and within the scope of duties determined by you, and is not paid a fee, salary, or other compensation by you or anyone else for their work performed by you." Mrs. Apple occasionally ran errands for the company, such as banking, sorting mail, writing checks, making deliveries to job sites, and

---

[2] The Policy provides the following definition of "employee": "'Employee' includes a 'leased worker', or a 'temporary worker.'"

helping Mr. Apple transport equipment. As discussed above, Mrs. Apple received no remuneration for her services. Indeed, Plaintiff concedes that Mrs. Apple is a volunteer worker by acknowledging that she would qualify as an insured had she been using the Town Car in the business or personal affairs of Building Industries at the time of the accident. Pl.'s Mot. for Summ. J. on Countercl. 15.

The parties agree that Mrs. Apple's use of the vehicle on the day of the accident was not within Building Industries' "business affairs," but they dispute whether this use was part of the corporation's "personal affairs."[3] Courts disagree whether the term "personal affairs" is ambiguous when used in reference to a corporation. Some courts have found that the phrase is not ambiguous and construed it according to the term's plain meaning. *See Pham v. Hartford Fire Ins. Co.*, 419 F.3d 286, 290 (4th Cir. 2005) (employee returning home from a night spent drinking not engaged in "personal affairs" of corporation because he was not acting "on behalf of" corporation); *Wolfensberger v. Eastwood*, 889 N.E.2d 635, 638 (Ill. App. Ct. 2008) (phrase covers employees acting in the scope of their employment); *Alaska Nat'l Ins. Co. v. Bryan*, 104 P.3d 1, 6 (Wash. Ct. App. 2004) (term is broader than "course and scope of employment" but does not include an employee's night out drinking); *Erie Ins. Co. v. Massie*, No. 1620, 2004 WL 1047452, at *4 (Ohio Ct. App. May 7, 2004) (language includes office parties, company picnics, or company sponsored athletic events, but not personal affairs of employees). Other courts have held that the term is ambiguous and therefore construed it against the insurer. *See Lincoln Gen. Ins. Co. v. Gateway Sec. Servs., Inc.*, 1:06-cv-01143, 2007 WL 3203020, at *16 (E.D. Cal. Oct. 29, 2007) (commute within "personal affairs" of corporation when the business understood and expected the employee to be available to run errands on its behalf during the commute);

---

[3] Contrary to Plaintiff's contention, Mrs. Apple's admission in her answer that she was not using the car in the "business or affairs" of Building Industries does not bind her to the position that the accident was outside the corporation's "personal affairs."

*Vandevander v. State Auto Ins. Co.*, No. L-03-1200, 2004 WL 1368313, at *2 (Ohio Ct. App. June 18, 2004) (phrase does not include purely personal use of vehicle by corporation's employee).

Although courts have not reached a consensus as to what exactly constitutes the "personal affairs" of a corporation, no authority suggests that this language would be applicable to Mrs. Apple's use of the Town Car on the day of the accident. Even under the expansive reading of the phrase in *Pham*, any action taken "on behalf of" the employer, Building Industries' "personal affairs" do not extend to Mrs. Apple's May 18, 2012 trip from the hospital. 419 F.3d at 290. Mr. Apple was not working for Building Industries the day of the accident; he had been hospitalized for several days prior and he did not return to work upon arriving home. Additionally, Mrs. Apple's actions in driving Mr. Apple home from the hospital were wholly unrelated to the business of Building Industries, i.e., constructing structures for profit. No reasonable fact finder would conclude that Mrs. Apple was acting on behalf of Building Industries that day. For these reasons, I determine that Mrs. Apple was not acting in Building Industries' "personal affairs" at the time of the accident, and therefore is not entitled to coverage under the related provision of the Policy.

### C. Reformation

Defendants also pray for reformation of the Policy. Reformation is appropriate in two circumstances: first, when a mutual mistake leads to the omission or insertion of a material stipulation that is contrary to the intention of both parties, and second, when a mistake by one party is accompanied by fraud or other inequitable conduct by the other. *Bankers Fire Ins. Co. v. Henderson*, 83 S.E.2d 424, 429 (Va. 1954). Inequitable conduct consists of "doing acts, or omitting things, or the making of representations, tending naturally to deceive as to the true

interpretation of the contract, which the court finds to be unconscionable." *Id.* (quoting *Am. Fruit Prod. Co. v. Barrett & Barrett*, 128 N.W. 1009, 1011 (Minn. 1910)). A party seeking reformation for mistake in a written instrument must "show by evidence which leaves no reasonable doubt upon the mind of the court, not only of what the mistake consists, but the correction which should be made." *Temple v. Virginia Auto Mut. Ins. Co.*, 25 S.E.2d 268, 271 (Va. 1943). The fact that an insured accepts a policy without noticing a mistake does not bar reformation, even if he read the document carelessly or failed to review it at all. *Dickenson Cnty. Bank v. Royal Exch. Assur. of London, England*, 160 S.E. 13, 18 (Va. 1931); *Baker Fire Ins. Co.*, 83 S.E.2d at 432.

Defendants argue that both Mr. Apple and BB&T intended to insure Mrs. Apple as a driver of the Town Car regardless of whether she drove it in Building Industries' affairs, and that any failure of the policy to insure her personally is the result of a mutual mistake. Conversely, Plaintiff maintains that BB&T never intended to insure Mrs. Apple's personal use of the Town Car. The record is unclear on the matter, and "when the disposition of a case turns on a determination of intent, courts must be especially cautious in granting summary judgment." *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979). Accordingly, I find that the issue involves a genuine dispute of material fact that cannot be resolved on summary judgment.

Some facts are undisputed. Mr. Apple purchased the Policy from BB&T, which as Selective's agent, gathered information and negotiated the sale on Selective's behalf. Specifically, Mr. Apple spoke on the phone with an authorized agent of BB&T, broker Dan Bussard ("Mr. Bussard"), who interviewed Mr. Apple and recorded his responses on a quote

sheet.[4] Mr. Apple cannot remember the specifics of this conversation. Mr. Bussard has not been deposed, but Corrie Hunter, who testified on BB&T's behalf pursuant to Fed. R. Civ. P. 30(b)(6), stated that Mr. Bussard also cannot recall the discussion in any detail. The quote sheet itself recorded the Town Car as a vehicle to be insured and listed Mr. Apple, Mrs. Apple, and John Apple under its "Driver Information" section. The final policy, issued by Selective, spanned 108 pages and contained 31 different forms and endorsements. It did not, however, contain an "Additional Insured and Loss Payee" endorsement, a two-page document that would have provided coverage to Mrs. Apple. Mr. Apple had been issued such an endorsement on an earlier policy for the Town Car when he had insured it through Cincinnati Insurance Company. Obviously these endorsements were available in the insurance industry, and the record suggests that Mr. Apple would not have wanted to purchase a policy that did not provide this kind of coverage.[5]

Plaintiff and Defendants disagree on the significance of these facts. Defendants contend that they are evidence that both parties intended to insure Mrs. Apple whenever she drove the Town Car. Specifically, they point to Mr. Apple's testimony that he intended to insure the vehicles however they were used and that he was never told whether individuals could be listed as additional insureds on a commercial policy. They also place great significance on the fact that Mrs. Apple was listed in the quote sheet's "Driver Information" section. Plaintiff counters that the form Mr. Bussard used to collect information from Mr. Apple was specific to commercial policies and that BB&T used a different template when issuing a personal policy. Plaintiff alleges that Mrs. Apple was included on the quote sheet solely for underwriting purposes.

---

[4] Any mistake by Mr. Bussard would be imputed to both BB&T and Selective. *Temple v. Va. Auto Mut. Ins. Co.*, 25 S.E.2d 268, 272-73 (Va. 1943).
[5] It is not clear what, if any, impact this kind of endorsement would have had on Building Industries' premium.

BB&T, Plaintiff argues, intended to issue a commercial policy which insured only business risks, not any individual's personal use of the Town Car.

The record does not allow me to say that a fact finder would necessarily conclude that either Plaintiff or Defendants' version of events is correct. There is a genuine dispute of fact as to the parties' intent, and this fact is material because it is determinative of whether the Policy should be reformed. Thus, neither Plaintiff nor Defendants are entitled to summary judgment on the matter.

### D. Coverage Under the Omnibus Clause

Finally, Defendants contend that the Policy covers the accident by operation of Virginia's Omnibus Clause. *See* VA. CODE ANN. § 38.2-2204(A). The Omnibus Clause extends insurance benefits to all permissive users of a covered vehicle, and as a remedial statute, should be liberally construed to grant coverage. *City of Norfolk v. Ingram*, 367 S.E.2d 725, 727 (Va. 1988); *accord Emick v. Dairyland Ins. Co.*, 519 F.2d 1317, 1321 (4th Cir. 1975). Any provision of an insurance policy that conflicts with the requirements imposed by the Omnibus Clause is void and superseded by the relevant portion of the statute. VA. CODE ANN. § 38.2-2204(E); *see also Haislip v. Southern Heritage Ins. Co.*, 492 S.E.2d 135, 137 (Va. 1997). The Omnibus Clause applies to any policy issued by an insurer licensed in Virginia for a motor vehicle principally garaged in Virginia, requirements met by the policy and vehicle at issue here. *Id.* at § 38.2-2204(A). The Policy provides coverage for permissive use, subject to certain exceptions. These exceptions are inconsistent with the Omnibus Clause, and as such are superseded pursuant to the statutes' mandate that all policies must "contain[] a provision insuring the named insured, and any other person using or responsible for the use of the motor vehicle . . . with the expressed or

implied consent of the named insured . . . ." *Id*. Further, the Supreme Court of Virginia has held that

> a named insured generally cannot give permission to use a vehicle that the named insured does not own . . . the [named insured] must, as a general rule, own the insured vehicle or have such an interest in it that he is entitled to the possession and control of the vehicle and in a position to give such permission.

*Stone v. Liberty Mut. Ins. Co.*, 478 S.E.2d 883, 886 (Va. 1996) (quoting *Nationwide Mut. Ins. Co. v. Cole*, 124 S.E.2d 203, 206 (Va. 1962)); *accord Virginia Auto Mut. Ins. Co. v. Brillhart*, 46 S.E.2d 377, 380 (Va. 1948). Thus there are two requirements for coverage to exist under the Omnibus Clause. First, the named insured must give permission to use the vehicle, and second, the named insured must either own the automobile or have "an interest" that entitles him to possession and control of the vehicle. *Id*. The record suggests that Building Industries meets both requirements with respect to the Town Car, but I believe this issue involves genuine disputes of fact that cannot be resolved on summary judgment.

The facts of this case are unique.[6] Building Industries is a closely held corporation that employs fewer than a dozen people. As a corporation, Building Industries can act only through its officers and agents. *See, e.g., Pulliam v. Coastal Emergency Servs. of Richmond, Inc.*, 509 S.E.2d 307, 320 (Va. 1999); *accord Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2768, 189 L. Ed. 2d 675 (2014) ("Corporations, separate and apart from the human beings who own, run, and are employed by them, cannot do anything at all.") (internal quotation marks omitted). Building Industries' sole shareholders are John Apple, who was also the corporation's director, and his father Mr. Apple, who served as Secretary, Treasurer, and Registered Agent of the corporation. Mr. Apple was serving in this capacity when he effected Building Industries'

---

[6] Plaintiff argues that *Pham v. Hartford Fire Ins. Co.*, 419 F.3d 286 (4th Cir. 2005) controls this case, but I find that the two are factually distinguishable. The insurance policy at issue in *Pham* did not list the vehicle as a covered auto nor did it list the named insured, the worker's employer, as the vehicle's owner. *Id.* at 291.

corporate decision to insure the Town Car. It may be inferred that this decision was accompanied by an expectancy that Building Industries would have a right to use the vehicle. The corporation also had full knowledge that the Apples would continue to drive the automobile while conducting their own affairs. After all, Mr. Apple and John Apple, acting as agents of Building Industries, were well aware that Mr. Apple and his wife had joint ownership of the Town Car.

The relationship between Mr. Apple, Mrs. Apple, and Building Industries suggests that each party used the Town Car with the acquiescence of the other two. Obviously all three parties could not drive the car at the same time; the arrangement was such that each had the others' consent to make reasonable use of the vehicle. Indeed, the record supports the claim that Building Industries impliedly consented to Mrs. Apple making general use the Town Car. *See Hinton v. Indemnity Ins. Co.*, 8 S.E.2d 279, 283 (Va. 1940) (explaining that implied consent "involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent."). Mrs. Apple had driven the Town Car for several years prior to the accident without objection from either of Building Industries' two shareholders, Mr. Apple and John Apple. Indeed, John Apple testified that she did not need to ask his or his father's permission to drive the vehicle, and Mr. Apple was actually sitting besides Mrs. Apple at the time of the accident. In addition, the Apples could not drive the car in their own affairs without insurance, which in this case was provided by Building Industries. Virginia law requires—under criminal penalty—that every owner of a vehicle registered in the Commonwealth either properly insure it or pay an uninsured motor vehicle fee. VA. CODE ANN. § 46.2-707. Accordingly, I believe a reasonable fact finder

could determine that Mrs. Apple had the implied consent of Building Industries to use the Town Car in her own affairs.

On the record before me, it is arguable that Building Industries meets the Omnibus Clause's requirement that the named insured have "an interest" in the automobile such that it was "entitled to the possession and control of the vehicle." *Stone*, 478 S.E.2d at 886. Building Industries used the Town Car to conduct its business, and one of its shareholders and officers, Mr. Apple, owned the vehicle jointly with Mrs. Apple. Building Industries also had an insurable interest in the Town Car insofar as its destruction would deny the corporation an economic benefit. *See Liverpool & London & Globe Ins. Co. v. Bolling,* 10 S.E.2d 518, 521 (Va. 1940) ("Any person who . . . stands in such relation [to the property] that its destruction would entail pecuniary loss upon him, has an insurable interest to the extent . . . of the loss of which he is subjected by the casualty."). Furthermore, I note that a number of courts have found similar omnibus statutes to extend coverage in situations where the policy listed a corporation as the named insured, but the vehicle was actually titled to an individual, although many of these cases have required the insurer to have known of the discrepancy. *Indus. Indem. Co. v. U. S. Fid. & Guar. Companies*, 454 P.2d 956, 957 (Idaho 1969); *Rea v. Hardware Mut. Cas. Co.*, 190 S.E.2d 708, 714 (N.C. Ct. App. 1972); *Selective Ins. Co. of Am. v. Salinas*, 79 Va. Cir. 131, at *3 (Va. Cir. Ct. 2009); *Greene v. Gen. Cas. Co. of Wisconsin*, 576 N.W.2d 56, 60-61 (Wis. Ct. App. 1997); *Kettner v. Wausau Ins. Companies*, 530 N.W.2d 399, 406 (Wis. Ct. App. 1995); *Home Ins. Co. v. Phillips*, 499 N.W.2d 193, 198 (Wis. Ct. App. 1993).

*Salinas*, which was governed by Virginia law, is particularly relevant.[7] That case concerned an accident caused by Miguel Santos Sanchez-Cabrera ("Santos"), who was driving a

---

[7] I note that Selective appeared as plaintiff in both *Salinas* and the case before me, and was in fact represented by the same counsel then as it is now in this case.

– 16 –

vehicle owned by his boss, Faylen Hillard ("Hillard"), on business unrelated to his employment. *Salinas*, 79 Va. Cir. 131, at *2. Although the vehicle was registered to Hillard personally, the policy identified his corporation, Hillard's Painting and Home Improvement, Inc., as the named insured. *Id*. Nonetheless, the court found that "Santos was operating the van at the time of the accident with the implied consent of Mr. Hillard," and that, "[t]herefore, coverage under Hillard's Painting & Home Improvement, Inc.'s policy must be extended to Santos pursuant to the 'omnibus clause.'" *Id*. at *3.

In sum, there are genuine disputes of material fact as to both whether Building Industries could grant an individual permission to use the Town Car under the ambit of the Omnibus Clause and whether it did in fact grant Mrs. Apple permission to use the vehicle. Therefore, I will deny summary judgment on this issue.

## IV. CONCLUSION

As set forth above, Plaintiff's movement for summary judgment on its initial complaint is DENIED, its motion for summary judgment on Defendants' counterclaims is GRANTED in part and DENIED in part, and Mrs. Apple and Building Industries' motion for summary judgment is DENIED. Additionally, Mr. Hoar's motion to join and adopt Mrs. Apple and Building Industries' motion for summary judgment is GRANTED and Progressive's motion to join and adopt Mrs. Apple and Building Industries' motion for summary judgment is GRANTED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this  1st  day of December, 2014

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE