# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SELECTIVE WAY INSURANCE COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>ROSEANNE BROWNING APPLE., *et al.*,<br><br>*Defendants.* | CASE NO. 3:13-cv-00042<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

Plaintiff Selective Way Insurance Company ("Plaintiff," or "Selective") filed this action on October 3, 2013, seeking a declaratory judgment under 28 U.S.C. § 2201. The case arises from a May 18, 2012, motor vehicle accident (the "Accident") between defendant Roseanne Browning Apple ("Mrs. Apple") and Earl Eugene Hoar ("Mr. Hoar"). Mrs. Apple was driving a 2004 Lincoln Town Car at the time of the accident, which was insured under a commercial policy (the "Policy") issued by Selective. Selective now argues that Mrs. Apple is not entitled to coverage under the Policy because she does not qualify as an insured. Accordingly, Selective seeks a declaration that it has no duty to either defend or indemnify Mrs. Apple in connection with any claim or lawsuit brought against her by Mr. Hoar, or to pay subrogation to his insurer, Progressive Gulf Insurance Company ("Progressive"). Mrs. Apple and Building Industries, Inc. ("Building Industries") have filed a counterclaim, which Mr. Hoar and Progressive have joined, seeking a declaratory judgment that Mrs. Apple qualifies as an insured; reformation of the policy to include Mrs. Apple as an insured; and a determination that Selective is estopped from denying coverage. The parties filed cross motions for summary judgment, on which I ruled December 1, 2014, dismissing many, but not all, of the parties' claims, as I found that there were genuine

[1]

disputes of material fact relating to Mrs. Apple's claims for reformation of the Policy and for coverage under the permissive use provision of the Virginia Omnibus Clause, Va. Code. § 38.2-2204 ("Omnibus Clause").

A one-day bench trial took place on July 28, 2015. At trial, the parties contested three central issues: (1) whether Mrs. Apple had the permission of Building Industries to drive the Town Car; (2) whether Building Industries had an interest in the Town Car sufficient to grant coverage under the Omnibus Clause's permissive use provision; and (3) whether there was a mutual mistake between Clevius Carr Apple, Jr. ("Mr. Apple") and BB&T Insurance Services Inc. ("BB&T") such that the Policy issued by BB&T should be reformed to provide coverage for Mrs. Apple while she drove the Town Car in her personal affairs.

Federal Rule of Civil Procedure 52(a)(1) provides that "[i]n an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." As explained in the findings of fact and conclusions of law set forth below, I conclude that the Policy should not be reformed to include Mrs. Apple as an insured, but that Mrs. Apple is covered under the Policy by operation of the Virginia Omnibus Clause.

## I. BACKGROUND

Prior to trial, the parties stipulated to the following facts. Selective issued to Building Industries Commercial General Liability Policy No. 190933802 (the "Policy"), effective September 30, 2011. Building Industries, Inc., is the named insured under the Policy. Building Industries is a corporation organized under the laws of Virginia, and owned by Mr. Apple and his son, John Apple. The Policy lists the 2004 Lincoln Town Car, Vehicle Identification Number

[2]

1LNHM81WX4Y634895 (the "Town Car"), in the "Schedule of Covered Autos You Own." A specific dollar amount is listed in the Policy as the premium attributable to the Town Car. The Town Car is titled jointly to Mr. Apple and Mrs. Apple as individuals. Mr. Apple and Mrs. Apple are husband and wife and citizens of the Commonwealth of Virginia. The Town Car is principally garaged and used in the Commonwealth of Virginia. On May 18, 2012, Mrs. Apple was driving the Town Car when she was involved in a motor vehicle accident with Mr. Hoar. At the time of the Accident, Mr. Apple was in the Town Car sitting next to Mrs. Apple, who was transporting him home from Martha Jefferson Hospital.

## II. FINDINGS OF FACT

In addition to the facts stipulated to by the parties and described above, I make the following findings of fact:

a. **The Policy: Background**
   1. Selective authorized BB&T to gather information from clients and issue policies on Selective's behalf. Corrie Hunter Dep. 30:7–31:23, Aug. 4, 2014.

   2. Dan Bussard ("Mr. Bussard"), at all relevant times, was employed by BB&T. Corrie Hunter Dep. 69:19–21, Aug. 4, 2014.

   3. BB&T authorized Mr. Bussard to gather information from clients and issue polices on BB&T's behalf. Corrie Hunter Dep. 69:19–21, Aug. 4, 2014.

   4. Mr. Bussard received a financial incentive from BB&T by increasing the total premium of the policies he negotiated. Insuring additional vehicles under a policy increased the total premium of the policy. Corrie Hunter Dep. 86:24–87:16, Aug. 4, 2014.

   5. Mr. Apple purchased the Policy from BB&T. Corrie Hunter Dep. 30:7–12, Aug. 4, 2014.

   6. BB&T issued the Policy to Mr. Apple on behalf of Selective. Corrie Hunter Dep. 30:13–21, Aug. 4, 2014.

[3]

### b. The Policy: Negotiation

1. Mr. Bussard negotiated the Policy with Mr. Apple over the phone. Corrie Hunter Dep. 69:19–70:01, Aug. 4, 2014.

2. Mr. Bussard gathered information from Mr. Apple over the phone in order to issue the Policy. Corrie Hunter Dep. 69:19–70:1, Aug. 4, 2014.

3. Mr. Apple specifically informed Mr. Bussard that the Town Car, as well as Mr. Apple's other vehicles, were insured on a private individual policy. Trial Tr., 11, July 28, 2015.

4. Mr. Bussard encouraged Mr. Apple to insure the Town Car and Mr. Apple's other vehicles under a single policy issued by BB&T on behalf of Selective. Mr. Bussard informed Mr. Apple that it would be to Mr. Apple's advantage to insure all of his vehicles under a single policy. Trial Tr., 11, July 28, 2015.

5. Mr. Bussard handwrote Mr. Apple's responses to his inquiries on a quote sheet. Corrie Hunter Dep. 40:25–41:15, Aug. 4, 2014; Apple's Mot. Summ. J., Ex. F.

6. Neither Mr. Bussard nor BB&T asked Mr. Apple to submit an insurance application, and Mr. Apple did not submit an insurance application. Corrie Hunter Dep. 70:2–71:1, Aug. 4, 2014.

7. The information elicited from Mr. Apple by Mr. Bussard and recorded on the quote sheet was the only information used by BB&T to draft and issue the Policy. Corrie Hunter Dep. 70:2–71:1, Aug. 4, 2014.

8. The quote sheet prepared by Mr. Bussard contained a section titled "Driver Information." Mr. Bussard listed the names, dates of birth, and driver's license numbers of Mr. Apple, Mrs. Apple, and John Apple under this section. Apple's Mot. Summ. J., Ex. F.

9. The quote sheet listed the Town Car and three other vehicles as vehicles to be insured under the Policy. Apple's Mot. Summ. J., Ex. F.

10. The quote sheet prepared by Mr. Bussard contained no information regarding the ownership of the Apple vehicles. Apple's Mot. Summ. J., Ex. F.

11. Mr. Bussard did not ask Mr. Apple about the titling of the Town Car or the other three vehicles. Clevius Apple, Jr. Dep. 24:15–17, June 16, 2014; Trial Tr., 10–11, July 28, 2015.

12. Neither BB&T nor Selective attempted to obtain information regarding the titling of the Town Car or the other three vehicles. Corrie Hunter Dep. 86:11–15, Aug. 4, 2014.

13. Mr. Apple did not disclose his vehicle titling information because neither Mr. Bussard, BB&T, nor Selective requested the information. Clevius Apple, Jr. Dep. 24:6–11, June 16, 2014; Trial Tr., 20, July 28, 2015.

c. **The Final Policy**
   1. Mr. Apple believed that, and intended for, the Policy to provide coverage for himself, Mrs. Apple, and John Apple whenever they drove the Town Car. Clevius Apple, Jr. Dep. 24:6–11, June 16, 2014; Trial Tr., 20, July 28, 2015.

   2. There is insufficient evidence to determine whether or not Mr. Bussard believed that, or intended that, the Policy would provide coverage for Mr. Apple, Mrs. Apple, and John Apple whenever they drove the Town Car. Corrie Hunter Dep. 65:1–25, Aug. 4, 2014; Trial Tr., 11–12, 20, July 28, 2015.

   3. As issued, the Policy did not provide coverage for Mr. Apple, Mrs. Apple, and John Apple whenever they drove the Town Car. The Policy provided coverage only when they drove the Town Car in the furtherance of the business or personal affairs of Building Industries. Selective's Am. Compl., Ex. C.

   4. The Policy was in effect on May 18, 2012, the date of the Accident between Mrs. Apple and Mr. Hoar. Selective's Am. Compl., Ex. C.

[5]

5. The Policy requires Selective to defend and indemnify the insured against any lawsuit asserting a covered claim. Selective's Am. Compl., Ex. C.

6. Mr. Hoar has brought suit against Mrs. Apple in relation to the May 18, 2012, accident. Virginia Circuit Court of Louisa County Case no. CL13000305-00.

d. **Ownership of the Town Car**
   1. The Town Car is titled to Mr. and Mrs. Apple, and not Building Industries. Selective's Mot. Summ. J., Ex. A.

   2. Mr. Apple believed it would be difficult to obtain financing for a vehicle owned by a small corporation, such as Building Industries. Acting on this belief, Mr. Apple purchased the vehicles, including the Town Car, in his and his wife's name. Clevius Apple Dep. 20:14–21:18, June 16, 2014.

e. **Building Industries' Interest in the Town Car**
   1. Building Industries provided the funds used to pay for the Town Car in 2004. Trial Tr., 9, July 28, 2015.

   2. Building Industries paid costs associated with the upkeep of the Town Car. Trial Tr., 9, July 28, 2015.

   3. Building Industries paid the insurance premiums due on the Town Car under the Policy. Trial Tr., 9, July 28, 2015.

   4. Building Industries paid for the Town Car's gasoline. Clevius Apple, Jr. Dep. 31:8–14, June 16; Trial Tr., 64, July 28, 2015.

   5. Building Industries regularly used the Town Car as a business vehicle. For instance, Building Industries used the Town Car to haul equipment and supplies to work sites. Rosanne Apple Dep. 31:4–32:2, June 16, 2014; Trial Tr., 5–8, 67–68, 70 July 28, 2015.

[6]

6. Building Industries derived economic benefit from its use of the Town Car. Rosanne Apple Dep. 31:4–32:2, June 16, 2014; Trial Tr., 9–10, 70, July 28, 2015.

7. Both Building Industries and the Apples believed and understood that Building Industries had a right to possess and control the Town Car. Rosanne Apple Dep. 20:7–21:1, June 16, 2014; Trial Tr., 5–8, 26, 65, 68 July 28, 2015.

f. **Mrs. Apple's Use of the Town Car**
1. Mrs. Apple regularly drove the Town Car as a personal vehicle. Rosanne Apple Dep. 31:4–32:2, June 16, 2014.

2. Mrs. Apple regularly drove the Town Car on behalf of Building Industries. For instance, Mrs. Apple used the Town Car to haul equipment and supplies to work sites and to deliver Building Industries' checks to banks. Rosanne Apple Dep. 31:4–32:2, June 16, 2014; Trial Tr., 5–8, 62, 67–68, 70 July 28, 2015.

3. Mr. Apple, John Apple, and Building Industries were aware that Mrs. Apple regularly drove the Town Car as a personal vehicle. Neither party objected to Mrs. Apple's use of the Town Car as a personal vehicle. John Apple Dep. 20:7–9, Aug. 14, 2014; Trial Tr., 8–9, 18–19, 62–63, 74–75, July 28, 2015.

## II. Conclusions of Law

### a. Applicable Legal Standards

*1. The Virginia Omnibus Clause: Overview*

The Virginia Omnibus Clause applies to any policy issued by an insurer licensed in Virginia that covers a motor vehicle principally garaged in Virginia. Va. Code. § 38.2-2204(A). Any provision of an insurance policy that conflicts with the requirements imposed by the Omnibus Clause is void and superseded by the relevant portion of the statute. *Id.* § 38.2-2204(E); *accord Haislip v. Southern Heritage Ins. Co.*, 492 S.E.2d 135, 137 (Va. 1997) ("[T]he

[7]

omnibus statute is by force of its provisions made a part of a liability policy, and is to be liberally construed to accomplish its intended purpose.") (internal quotation marks omitted) (quoting *Grange Mutual v. Criterion Ins. Co.*, 188 S.E. 2d 91, 93 (Va. 1972)).

Likewise, the Supreme Court of Virginia has emphasized that the Omnibus Clause is a remedial statute, and, as such, "is to be liberally construed to effectuate insurance coverage to permissive users." *City of Norfolk v. Ingram*, 367 S.E.2d 725, 727 (Va. 1988); *see also Haislip*, 492 S.E.2d at 137 ("[The Omnibus Clause] 'is to be liberally construed to accomplish its intended purpose.'") (quoting *Grange Mutual v. Criterion Ins. Co.*, 188 S.E.2d 91, 93 (Va. 1972)); *Storm v. Nationwide Mut. Ins. Co.*, 97 S.E.2d 759, 762 (Va. 1957) ("[The Omnibus Clause] is to be liberally construed so that the purpose intended may be accomplished."); *see also Jordan v. Shelby Mut. Plate Glass & Cas. Co.*, 142 F.2d 52, 57 (4th Cir. 1944) ("[T]he 'omnibus clause' statute, as remedial legislation, must be liberally interpreted to . . . broaden the coverage of automobile-liability policies.").

2. *Scope of the Clause*

The Omnibus Clause extends a policy's insurance coverage to anyone who drives a covered vehicle with the permission of the named insured. *See* Va. Code. § 38.2-2204(A) ("No policy . . . shall be issued or delivered in this Commonwealth . . . unless the policy contains a provision insuring the named insured, and any other person using or responsible for the use of the motor vehicle, aircraft, or private pleasure watercraft with the expressed or implied consent of the named insured."). The Supreme Court of Virginia has further clarified that:

> [A] named insured generally cannot give permission to use a vehicle that the named insured does not own . . . [T]he [named insured] must, as a general rule, own the insured vehicle *or have such an interest in it that he is entitled to the possession and control of the vehicle and in a position to give such permission.*

[8]

*Stone v. Liberty Mut. Ins. Co.*, 478 S.E.2d 883, 886 (Va. 1996) (emphasis added) (quoting *Nationwide Mut. Ins. Co. v. Cole*, 124 S.E.2d 203, 206 (Va. 1962)). The Supreme Court of Virginia has made clear that when, like Business Industries, the named insured does not own the covered vehicle, the Omnibus Clause will extend coverage for permissive use when the named insured has such an interest that he is entitled to the possession and control of the vehicle and in a position to give such permission. *Id.*[1]

Consent or permission to use the vehicle from the named insured may be express or implied. Implied consent "involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent." *Hinton v. Indemnity Ins. Co.*, 8 S.E.2d 279, 283 (Va. 1940). Moreover, the Supreme Court of Virginia has stated that "[i]n defining 'implied permission,' and applying it to the facts of the many cases we have had, this court has been liberal in its interpretation and application, and has gone far in holding insurance carriers liable." *Fid. & Cas. Co. of N. Y. v. Harlow*, 59 S.E.2d 872, 874 (Va. 1950).

3. *Reformation*

Reformation of a contract is appropriate in two circumstances: first, when a mutual mistake leads to the omission or insertion of a material stipulation that is contrary to the intention of both parties; and second, when a mistake by one party is accompanied by fraud or other inequitable conduct by the other. *Bankers Fire Ins. Co. v. Henderson*, 83 S.E.2d 424, 429 (Va.

---

[1] At trial, Selective rehashed some of its earlier arguments regarding the applicability of the Omnibus Clause to the facts of this case. I note that under Selective's reading of the case, Mr. Apple would not be covered if he drove the Town Car home at night or drove it to lunch. Coverage would exist only when he drove the Town Car strictly in furtherance of Business Industries business, such as using the vehicle to deliver supplies to a work site. The cases cited by Selective in support of its position, where courts have declined to find coverage under the Omnibus Clause, are easily distinguishable from the facts of this case, as none of them involved a policy that listed the vehicle involved in the accident as a covered auto, nor did the named insured contribute funds to the purchase, maintenance, or insurance premiums of the vehicle. *See, e.g., Pham v. Hartford Fire Ins. Co.*, 419 F.3d 286, 291 (4th Cir. 2005) (determining that the Omnibus Clause did not mandate coverage when an employee was in an accident in his own personal vehicle which he occasionally used for work purposes).

[9]

Case 3:13-cv-00042-NKM-RSB   Document 113   Filed 09/08/15   Page 9 of 12   Pageid#: 2287

1954). Defendants bear the burden of proof on their reformation claim, as a party seeking reformation for mistake in a written instrument must "show by evidence which leaves no reasonable doubt upon the mind of the court, not only of what the mistake consists, but the correction which should be made." *Id.* at 431; *see also Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 594 F. Supp. 2d 630, 646 (E.D. Va. 2009) (emphasizing that a "high threshold [is] required to establish a mutual mistake"). The fact that an insured accepts a policy without noticing a mistake does not bar reformation, even if he read the document carelessly or failed to review it at all. *Dickenson Cnty. Bank v. Royal Exch. Assur. of London, England*, 160 S.E. 13, 18 (Va. 1931); *accord Baker Fire Ins. Co.*, 83 S.E.2d at 432. Any mistake of an agent, such as Mr. Bussard, is imputed to its principal, in this case BB&T, and its principal, Selective. *Temple v. Virginia Auto Mut. Ins. Co.*, 25 S.E.2d 268, 272-73 (Va. 1943); *see also* Va. Code. § 38.2-1801(A).

### b. Conclusions of Law

1. The Policy cannot be reformed due to mutual mistake. Although it is clear beyond a reasonable doubt that Mr. Apple intended Mrs. Apple to be insured whenever she drove the Town Car, it is not clear that Mr. Bussard also intended the Policy to contain such a stipulation insuring Mrs. Apple. I therefore conclude that the evidence is insufficient to satisfy the high threshold required to establish a mutual mistake. *Henderson*, 83 S.E.2d at 429.

2. Building Industries implicitly consented to Mrs. Apple's personal use of the Town Car. Building Industries' intimate relationship with the Apples, coupled with their past course of conduct, signals acquiescence and lack of objection to Mrs. Apple's personal use of the Town Car. *See Hinton*, 8 S.E.2d at 283; *see also Pulliam v. Coastal Emergency Servs.*

[10]

*of Richmond, Inc.*, 509 S.E.2d 307, 320 (Va. 1999) (explaining that a corporation can act only through its agents).

3. Building Industries had an interest in the Town Car such that it was entitled to the possession and control of the vehicle, and was in a position to give Mrs. Apple permission to use the vehicle for personal use. *See Stone v. Liberty Mut. Ins. Co.*, 478 S.E.2d 883, 886 (Va. 1996) (quoting *Nationwide Mut. Ins. Co. v. Cole*, 124 S.E.2d 203, 206 (Va. 1962)). This interest is clearly established by the following facts: (1) Building Industries provided funds to purchase the Town Car; (2) Building Industries paid for the Town Car's maintenance, gas, and insurance premiums; (3) Mr. Apple, Mrs. Apple, and John Apple understood that Building Industries had a right to use the vehicle; (4) Building Industries would suffer a financial injury from loss of use of the vehicle. *See Liverpool & London & Globe Ins. Co. v. Bolling*, 10 S.E.2d 518, 521 (Va. 1940) ("Any person who has an interest in the property, legal or equitable, or who stands in such relation thereto that its destruction would entail pecuniary loss upon him, has an insurable interest to the extent of his interest therein, or of the loss of which he is subjected by the casualty.").

4. Because Building Industries had an interest in the Town Car such that it was entitled to the possession and control of the vehicle, was in a position to give Mrs. Apple permission to use the vehicle for personal use, and in fact implicitly consented to Mrs. Apple's use of the vehicle, the Omnibus Clause mandates coverage for Mrs. Apple. *Stone*, 478 S.E.2d at 886.

5. Because Mrs. Apple's Accident is insured by the Policy under the Omnibus Clause, Selective has a duty to defend Mrs. Apple against any claims relating to the May 18,

2012 accident and to provide such coverage to her as is applicable to a person insured under the terms of the policy and the Omnibus Clause.

### III. CONCLUSION

Based on all the evidence presented at trial, I conclude that: (1) the Policy cannot be reformed due to mutual mistake; (2) the permissive use provision of the Omnibus Clause extends coverage to Mrs. Apple for the Accident, as she was driving with the implied consent of Building Industries, the named insured, and Building Industries had an interest in the Town Car sufficient to grant consent under the Omnibus Clause's permissive use provision; and (3) Selective must defend Mrs. Apple against any claim brought against her relating to the May 18, 2012 accident. An appropriate Order accompanies this Memorandum Opinion.

Entered this ____ day of September, 2015.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE